**UNITED STATES DISTRICT COURT NORTH DAKOTA**
**WESTERN DIVISION**

| Howard J. Miller, et al. | ) Civil Action No. 1:20-cv-00132-DMT-CRH |
|---|---|
| Plaintiffs, | ) ) ) ) ) ) |
| v. | ) |
| Juárez Cartel, a/k/a Vicente Carrillo Fuentes Organization (a/k/a "CFO"), a/k/a La Línea. | ) ) ) ) ) |
| Defendant. | ) |

**MEMORDANUM OF LAW IN SUPPORT OF *MILLER* PLAINTIFFS' APPLICATION FOR ATTORNEY'S FEES AND COSTS UNDER 18 U.S.C. § 2333(a)**

Plaintiffs in *Miller, et al. v. Juárez Cartel*, Case No. 1:20-cv-00132-DMT-CRH (the "*Miller* case"), submit this memorandum in support of their application for attorney's fees and costs under 18 U.S.C. § 2333(a). Notwithstanding being served via publication in this case in accordance with this Court's orders, Defendant Juárez Cartel did not file an appearance in this proceeding, and it did not defend the suit at trial. Plaintiffs seek attorney's fees and costs as permitted under 18 U.S.C. § 2333(a). The only issue for the Court's consideration is the reasonableness of the amount requested.

**INTRODUCTION**

On November 4, 2019, members of Defendant Juárez Cartel and its violent armed wing, La Línea, ambushed and murdered three women and six of their children in the Sierra Alta in Sonora State in Mexico. In a series of coordinated assaults, the families came under attack approximately 90 miles south of the United States-Mexico border as they drove in a three-car

convoy between the Mexican states of Sonora and Chihuahua. The attacks resulted in the deaths of the three mothers driving the vehicles in the convoy—Maria Rhonita LeBaron ("Rhonita"), Christina Langford ("Christina"), and Dawna Ray ("Dawna")—along with six of the 14 minor children who were accompanying their mothers on the trip.[1] On July 23, 2020, the *Miller* case was filed in this Court by Howard Miller (on his own behalf, on behalf of his wife Rhonita's estate, on behalf of the estates of his four children who were murdered, and on behalf of his three surviving minor children), additional members of the Miller/LeBaron family, Tyler Johnson (on his own behalf, on behalf of his wife Christina's estate, and on behalf of his six surviving minor children), additional members of the Johnson/Langford family, and members of Dawna Ray's family.[2] The 51-page complaint sought damages arising under the civil damages provision of the Anti-Terrorism Act (18 U.S.C. § 2333(a)); assault and battery; wrongful death; negligent and/or intentional infliction of emotional distress; survival; and loss of consortium for claims on behalf of six estates of individuals who were killed on November 4, 2019, one individual who was present during the ambush in which her mother was murdered, and 35 family members of the decedents seeking claims for emotional distress and solatium damages.

On October 16, 2020, the Court entered an Order consolidating the *Miller* case with the separately filed *Langford* action in which claims were being pursued for Dawna's husband, her estate, the estates of her two children who were killed, and on behalf of both the surviving children from the vehicle along with Dawna's remaining children who were not passengers in her vehicle at the time of the ambush.[3] While the cases were consolidated by the Court, the *Miller* Plaintiffs and the *Langford* Plaintiffs are submitting separate applications to the Court related to the work

---

[1] *See* ECF No. 1 at Introduction.
[2] *See* ECF No. 1 (Complaint in the *Miller* action).
[3] *See* ECF No. 17.

convoy between the Mexican states of Sonora and Chihuahua. The attacks resulted in the deaths of the three mothers driving the vehicles in the convoy—Maria Rhonita LeBaron ("Rhonita"), Christina Langford ("Christina"), and Dawna Ray ("Dawna")—along with six of the 14 minor children who were accompanying their mothers on the trip.[1] On July 23, 2020, the *Miller* case was filed in this Court by Howard Miller (on his own behalf, on behalf of his wife Rhonita's estate, on behalf of the estates of his four children who were murdered, and on behalf of his three surviving minor children), additional members of the Miller/LeBaron family, Tyler Johnson (on his own behalf, on behalf of his wife Christina's estate, and on behalf of his six surviving minor children), additional members of the Johnson/Langford family, and members of Dawna Ray's family.[2] The 51-page complaint sought damages arising under the civil damages provision of the Anti-Terrorism Act (18 U.S.C. § 2333(a)); assault and battery; wrongful death; negligent and/or intentional infliction of emotional distress; survival; and loss of consortium for claims on behalf of six estates of individuals who were killed on November 4, 2019, one individual who was present during the ambush in which her mother was murdered, and 35 family members of the decedents seeking claims for emotional distress and solatium damages.

On October 16, 2020, the Court entered an Order consolidating the *Miller* case with the separately filed *Langford* action in which claims were being pursued for Dawna's husband, her estate, the estates of her two children who were killed, and on behalf of both the surviving children from the vehicle along with Dawna's remaining children who were not passengers in her vehicle at the time of the ambush.[3] While the cases were consolidated by the Court, the *Miller* Plaintiffs and the *Langford* Plaintiffs are submitting separate applications to the Court related to the work

---

[1] *See* ECF No. 1 at Introduction.
[2] *See* ECF No. 1 (Complaint in the *Miller* action).
[3] *See* ECF No. 17.

they performed on their separate cases. After Defendant Juárez Cartel was served by publication and failed to appear, an Entry of Default was entered in the *Miller* case on December 7, 2020.[4]

At the request of the Plaintiffs, a trial was conducted before the Honorable Magistrate Judge Clare Hochhalter beginning on February 7, 2022 and concluding on February 10, 2022, during which counsel for the *Miller* case presented to the Court evidence and testimony both regarding the liability of the Defendants in addition to damages sustained by the *Miller* Plaintiffs as a result of the act of international terrorism conducted on November 4, 2019 by Defendant Juárez Cartel. Through live testimony and written documents, evidence was presented as to the pain, suffering, and damages suffered by each *Miller* Plaintiff as a result of the Defendant's acts. The *Miller* Plaintiffs now request the Court award "the cost of the suit, including attorney's fees."[5]

## ARGUMENT

**I.   The Civil Damages Provision of the Anti-Terrorism Act, codified at 18 U.S.C. § 2333(a), specifically provides for the recovery of "the cost of the suit, including attorney's fees."**

Plaintiffs' claims are grounded in the Anti-Terrorism Act which provides a claim for civil damages as follows:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains **and the cost of the suit, including attorney's fees**.[6]

To the extent that the Court enters default judgment in this case on behalf the *Miller* Plaintiffs consistent with the filed Proposed Findings of Fact and Conclusions of Law, then the *Miller* Plaintiffs are also entitled—under the unambiguous wording of the statute—to "the cost of suit,

---

[4] ECF No. 22.
[5] 18 U.S.C. § 2333(a).
[6] *Id.* (emphasis added).

including attorney's fees."[7] In fact, when interpreting a statute with identical verbiage—specifically, 18 U.S.C. § 1964(c) in the RICO scenario—the Eighth Circuit has stated that "an award of reasonable attorney's fees and costs under [this verbiage] is mandatory…."[8]

## II. The Court possesses "broad discretion" in addressing Plaintiffs' Fee Petition.

The trial court has "broad discretion" in determining the amount of reasonable attorney's fees.[9] "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."[10] While the Supreme Court in *Hensley* addressed twelve factors that might be relevant to the Court's determination of the amount of attorney's fees to award,[11] the Eighth Circuit has noted that *Hensley* addressed the situation where the fee provision was permissive and not mandatory as is the situation here.[12] While "district courts may rely on their own experience and knowledge of prevailing market rates…, [t]here is no precise rule or formula for making these determinations."[13]

### A. Plaintiffs' Counsel's Hourly Rates are Supported by Their Skill and Expertise in the Subject Area.

The work performed by the *Miller* Plaintiffs' counsel in this case required highly skilled and specialized legal practitioners given the intricacies of the law and the types of evidence

---

[7] *See Delloye v. Revolutionary Armed Forces of Colombia*, 2022 U.S. Dist. LEXIS 32040, at *2 (M.D. Pa. Feb. 23, 2022) ("Because Delloye prevailed in securing damages under the ATA, he is entitled to attorney's fees"); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1339 (D. Utah 2006) (holding that under the ATA, "plaintiffs are also entitled to attorney's fees").

[8] *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 575 (8th Cir. 1996).

[9] *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

[10] *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002), *citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[11] *See Hensley*, 461 U.S. at 430, n.3 (listing the 12 factors as "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

[12] *See United HealthCare Corp.*, 88 F.3d at 576 n. 10.

[13] *Brewington v. Keener*, 902 F.3d 796, 805 (8th Cir. 2018), *quoting Hanig*, 415 F.3d at 825, *and Hensley*, 461 U.S. at 436.

collected and presented at trial to prove the underlying claims. While this case proceeded to trial through default proceedings, this litigation presented special challenges, unique and novel questions of law, and risk. A member of the *Miller* trial team, and former Attorney General of the Mexican State of Sonora, Abel Murrieta, was murdered by the Cartel on May 13, 2021.[14] Further, evidence from the trial demonstrated that counsel for the *Miller* plaintiffs traveled to Mexico, retained Mexican counsel, translated thousands of pages of Mexican Government investigative documents, procured approval from the Mexican Government to permit the Mexican prosecutor in the criminal case related to the November 4, 2019 attacks to testify at trial, and obtained apostilled records from the Mexican Government to establish liability in addition to the technical details of the attacks themselves.

1. **Motley Rice LLC**

As demonstrated in the firm and attorney biographies attached as exhibits to the Declaration of John M. Eubanks submitted in conjunction with Plaintiffs' motion, Plaintiffs' counsel in this case bring unique resources and experience to this action, demonstrating significant experience in complex international mass tort and human rights litigation and, more specifically, in litigation arising under the Anti-Terrorism Act. As set forth in the Motley Rice LLC "Firm Resume", attached as Exhibit A to the Declaration of John M. Eubanks, "Motley Rice attorneys have been at the forefront of some of the most significant and monumental civil actions over the last 30 years" including the Nationwide Opioid Litigation, the Tobacco Master Settlement Agreement, the BP/Deepwater Horizon Settlement, the Volkswagen "Clean Diesel" Litigation Settlement, LLC, and numerous others set forth on the Firm Resume. Motley Rice LLC is

---

[14] *See* Associated Press, "Abel Murrieta, Lawyer for LeBaron family, candidate for mayor in northern Mexico, killed", May 17, 2021 (available at https://www.msn.com/en-us/news/world/abel-murrieta-lawyer-for-lebarón-family-candidate-for-mayor-in-northern-mexico-killed/ar-BB1gNnvn).

headquartered in Mount Pleasant, South Carolina and has offices Rhode Island, Connecticut, New York, West Virginia, the District of Columbia, New Jersey, and Pennsylvania with 46 Member Attorneys, nine Senior Counsel Attorneys, two Counsel Attorneys, 50 Associate Attorneys, five Staff Attorneys, and dozens of Project and Contract attorneys spread across all offices of the firm.

Michael Elsner, lead trial counsel for the *Miller* Plaintiffs, is a 1997 graduate of the University of Memphis Cecil C. Humphreys School of Law.  He joined the firm in 2002 and was promoted to Member of the firm in 2005. Mr. Elsner has been involved in various leadership positions in litigation arising under the Anti-Terrorism Act and related litigation since he joined Motley Rice including the groundbreaking litigation against the financiers of Al Qaeda on behalf of thousands of victims of the Terrorist Attacks on September 11, 2001.  He tried to liability verdict one of the first civil lawsuits brought under the Antiterrorism Act against a financial institution, *Linde, et al. v. Arab Bank, PLC*, Case No. 04-cv-2799 (BMC) (E.D.N.Y.), and has also had one of his cases proceed to the Supreme Court to determine whether the Alien Tort Statute, 28 U.S.C. § 1350, would permit suits against foreign corporations for violations of the law of nations.  His experience seeking justice for individuals who have suffered human rights abuses abroad is borne out by his lead role in litigation on behalf of individuals who contracted silicosis and other lung diseases and damage in gold mines in South Africa and as the lead negotiator of the settlement that brought compensation to these individuals. Mr. Elsner also plays a leading role within Motley Rice LLC in representing states and municipalities against the opioid industry, including manufacturers, distributors, and pharmacies, and he is trial counsel for the Track 7 pharmacy case within the nationwide opioid Multi-District Litigation that is currently set to proceed to trial in early-2023. A more complete biography for Michael Elsner is attached to the Eubanks Declaration as Exhibit B.

John Eubanks—who was a counterterrorism professional prior to entering legal private practice following his 2003 graduation from the Georgetown University Law Center—also became a Member of Motley Rice LLC in 2017.  He joined the firm in 2004 where he has worked side-by-side with Michael Elsner on groundbreaking antiterrorism and human rights litigation including litigation arising from: the terrorist attacks on September 11, 2001; suicide bombings conducted against civilians in Israel; terrorist bombings by the Liberation Tigers of Tamil Eelam in Sri Lanka; the killing and maiming of U.S. servicemen and women by terrorists in Iraq from 2003 through 2011; the use of children as slaves in the camel-racing industry in the United Arab Emirates; and numerous other similarly high-profile litigations. Exhibit C to the Eubanks Declaration provides a more comprehensive biography of Mr. Eubanks' accomplishments.

Together, Mr. Elsner and Mr. Eubanks have nearly four decades of international antiterrorism litigation experience and are two of the most qualified attorneys in the country litigating high-stakes ATA cases. In 2016, they were jointly named among the Trial Lawyers of the Year by the Public Justice Foundation for their work in litigation against Arab Bank plc, a Jordanian bank that was alleged to have provided material support or resources to the Hamas terrorist organization (among others) which resulted in the murder of numerous American citizens in Israel. Joining them on the trial team in this case from Motley Rice LLC is Courtney Wolf, a 2019 graduate of Washington and Lee University School of Law and an Associate with the firm since she graduated from law school.  Her practice is focused an Anti-Terrorism issues, and she works directly with both Michael Elsner and John Eubanks on this case and others within Motley Rice LLC's Anti-Terrorism and Human Rights Practice Group.  Ms. Wolf has worked on this case since the initial meetings were held with the affected families in December 2019.  Attached as Exhibit D to the Eubanks Declaration is a more fulsome biography for Ms. Wolf.

In addition to the attorneys within Motley Rice LLC, the firm extensively utilized the services of two experienced trial paralegals who were instrumental in facilitating the smooth trial process and the logistics necessary to make that possible. Megan Neubert has worked for Motley Rice LLC since 2012 within the firm's Anti-Terrorism and Human Rights Practice Group, and she has worked directly with Michael Elsner and John Eubanks throughout her tenure at the firm. Prior to coming to Motley Rice LLC, Ms. Neubert had worked in the legal-services industry for eight years in New York. The second paralegal, Amanda Unterreiner, has worked for Motley Rice LLC since 2006. She is among the top trial paralegals in the country covering high-profile litigation including the National Opioid Multi-District Litigation and the Florida-based individual tobacco litigation. She also has worked in the Motley Rice LLC Anti-Terrorism and Human Rights Practice Group since she began working at the firm and specifically with Michael Elsner and John Eubanks on their trials and cases.

Below are the current prevailing market rates, hours billed, and lodestar figures for Motley Rice LLC's attorneys and paralegals seeking fees with this Application:[15]

| NAME/TITLE | HOURS BILLED | HOURLY RATE | TOTAL HOURLY FEES |
|---|---|---|---|
| Michael E. Elsner/ Member Attorney | 720.60 | $925.00 | $666,555.00 |
| John M. Eubanks/ Member Attorney | 313.80 | $775.00 | $243,195.00 |
| Courtney Wolf/ Associate Attorney | 924.30 | $425.00 | $392,827.50 |
| Megan Neubert/Trial Paralegal | 978.40 | $325.00 | $317,980.00 |
| Amanda Unterreiner/ Trial Paralegal | 149.70 | $325.00 | $48,652.50 |

---

[15] The information provided in this table is set forth in Exhibit E to the Eubanks Declaration.

These billing rates have been accepted by other U.S. courts and in international courts addressing fee petitions related to work performed by Michael Elsner and John Eubanks. For example, in a case litigated in the U.S. District Court for the Eastern District of New York under the ATA, in a fee petition for discovery sanctions under Fed. R. Civ. P. 37(c), the court awarded an hourly rate to Michael Elsner of $650 per hour and an hourly rate to John Eubanks of $450 per hour for work performed between 2007 and 2010—between 12 and 15 years ago.[16] Addressing the defendant's opposition to these billing rates, the court in *Linde* stated that the consolidated cases there were "unusually complex in terms of fact, law, and case management; and the plaintiffs' lawyers have demonstrated their unusual qualifications and experience to handle them."[17] In class-action litigation convened in South Africa on behalf of gold miners who had contracted silicosis or other inhalation or respiratory diseases related to exposure in South Africa's gold mines, Michael Elsner served as an American legal consultant to the South African-based firms. He billed these firms according to his hourly rates that ranged from $700 per hour in 2012 to $925 per hour for work performed up to the July 26, 2019, court approval of the class settlement agreement, and this rate was found by the court to be "reasonable" by American standards.[18]

### 2. Mitchell & Mitchell LLC

In addition to the attorneys and support staff at Motley Rice LLC, Samuel Mitchell and Steven Mitchell, both partners of the law firm Mitchell & Mitchell LLC based in Phoenix, Arizona have been integral in the legal representation of the *Miller* Plaintiffs in this case. Mitchell & Mitchell LLC represents other United States nationals killed or injured by Mexican drug cartels (similar to this case) along with being actively involved in the nationwide opioid litigation where

---

[16] *See Linde v. Arab Bank, PLC*, 293 F.R.D. 138 (E.D.N.Y. 2013).
[17] 293 F.R.D. at 141.
[18] *See Ex Parte Nkala (44060/18)* 2019 ZAGPJHC 260 par. 122 (High Court of South Africa, Gauteng Local Division, Johannesburg, July 26, 2019).

9

their firm represents the nation's first hospital to have survived motion to dismiss against the manufacturers and distributors of opioids. Mitchell & Mitchell LLC also works closely with Motley Rice LLC in a co-counsel capacity to investigate and bring to light corporate malfeasance in such areas as antitrust, consumer protection, and human trafficking. In support of Mitchell & Mitchell LLC's contributions to this case, the Declaration of Samuel Mitchell is also being filed with this petition.

Samuel Mitchell, who presented multiple witnesses before the Court during trial, is a partner of Mitchell & Mitchell LLC and has been since 2019. Licensed to practice law in 2017, Samuel Mitchell has played an active role in the firm's day-to-day management, has successfully litigated numerous motions to dismiss in the nationwide opioid litigation against national counsel for the Defendants, assisted in working alongside national and case-specific expert witnesses to assist them in preparing and producing their expert reports and ensuring they are prepared to testify at trial. This includes his detailed forensic work with Dr. Sebastian Schubl in this case who testified at trial before the Court.

Steven Mitchell is among the most revered plaintiffs' counsel in the past three decades. He represented 14 states with his prior firm Hagens, Berman and Mitchell (now Hagens Berman Sobol Shapiro LLP) in litigation against cigarette manufacturers in the United States, and he was one of two lawyers representing national counsel—along with Joseph Rice from Motley Rice LLC—sitting at the final negotiating table that resulted in the Tobacco Master Settlement Agreement and recovery in excess of $200 billion for client states. As a named partner in a nationwide plaintiffs' securities-fraud law firm, Steven Mitchell represented public and union pension funds across the United States. He was previously an Assistant United States Attorney for the District of Arizona,

ran the trial division for the Arizona Attorney General's office, and served in the Maricopa County Attorney's Office major felony bureau.

Mitchell & Mitchell LLC also partnered with Antonio Martinez Luna, a former Attorney General of the Mexican state of Baja, who provided invaluable assistance to the Plaintiffs' prosecution of this claim and its investigation in Mexico. In this capacity, Mr. Martinez developed (and maintained) relationships at local, state and federal levels which afforded Plaintiffs unprecedented access to, and understanding of, the Mexican legal system and its various, and often difficult nuances.

Mr. Martinez and Mr. Murrieta, who worked together previously as attorney generals of Baja and Sonora respectively, made numerous trips to Mexico City, Colonia LeBaron, and La Mora to investigate the November 4, 2019, massacre. They worked tirelessly with Mexican authorities and were present in criminal court proceedings wherein they represented the rights and interests of the *Miller* Plaintiffs. Furthermore, Mr. Martinez, through numerous discussions with senior federal officials, is responsible for procuring approval from the Mexican Government to permit the testimony of the lead Mexican prosecutor in the criminal case related to the November 4, 2019, attacks and, the numerous apostilles received into evidence during trial.

As with their colleagues at Motley Rice LLC, Samuel Mitchell and Steven Mitchell brought significant nationwide trial experience to this case on behalf of the *Miller* Plaintiffs. Below are the current prevailing market rates, hours billed, and lodestar figures for Mitchell & Mitchell LLC's attorneys seeking fees with this Application:[19]

| NAME/TITLE | HOURS BILLED | HOURLY RATE | TOTAL HOURLY FEES |
|---|---|---|---|
| Samuel F. Mitchell/ Partner Attorney | 1812.20 | $600.00 | $1,087,320.00 |

---

[19] The information contained in this table is set forth as Exhibit A to the Declaration of Samuel Mitchell.

| Steven C. Mitchell/ Partner Attorney | 679.4 | $1200.00 | $815,280.00 |
| Antonio Martinez Luna, Attorney Consultant | 1237.0 | $825.00 | $1,020,442.50 |

The volume of resources required for firms to manage massive amounts of foreign documents, translation of those documents, coordinating meetings with various Mexican government officials, and organizing testimony from a foreign country, all demonstrate that a reasonable client would necessarily have selected counsel with high-profile, international, and ATA litigation experience because doing so reflects the likelihood of obtaining a substantially better result than consulting with counsel who may be unfamiliar with the particulars of the ATA, working with foreign governments, working with documents in languages other than English, calculating damages under the ATA, presenting the evidence necessary to prove these cases, and having the capacity to manage clients spanning from Mexico to numerous states through the United States. The Court highlighted how this case "is so complicated and so voluminous and so unique" and how "in [the Court's] 34-odd years of dealing with justice in various forms, [the Court] has never seen a better presentation of evidence or a more horrific set of facts." Trial Tr., 553:19-24; 554:3-4.

Bearing in mind this body of case law, the complexity of the litigation, and Plaintiffs' counsel's experience, Plaintiffs submit that their hourly rates are reasonable.

**III. Plaintiffs Have Expended a Reasonable Number of Hours on Submissions and Trial and Have Paid Reasonable Costs and Expenses in Connection with the Above Submissions and Trial**

In order to determine the presumptive reasonable fee, in addition to confirming reasonable rates for counsel, the Court must determine whether the number of hours expended in the case was

reasonable. Hours reasonably expended are those actually expended minus excessive, redundant, or otherwise unnecessary hours.[20]

The hours submitted by Plaintiffs' counsel with this application are all related to preparing the *Miller* Plaintiffs' case for trial. The hours billed include, but are not limited to, client meetings to gather factual background information about the families, communities, and attacks; hiring subject-matter experts and investigators to assist in investigating the facts and setting forth the detailed allegations in the Complaint; hiring an expert on international service of process and serving the Complaint by international publication; drafting necessary pleadings and motions for submission to this Court; locating, retaining, and meeting with experts to obtain and produce the necessary expert opinions for this complex proceeding; appearing telephonically or in person for communications with the Court; conducting the damages trial before this Court including the preparation of witnesses and the pre-trial brief; preparation of the Proposed Findings of Fact and Conclusions of Law submitted on behalf of both the *Miller* and *Langford* Plaintiffs; and preparing this instant application for the award of reasonable attorney's fees and costs. The hours spent by *Miller* counsel were reasonable in their work to progress this case toward trial and adequately present the important facts for this Court to determine the appropriate quantum of damages.

The range of costs submitted in this Application include filing fees; travel for meetings with clients; costs to serve the Complaint through international publication; investigator-related fees and costs; expert-related fees and costs; document-translation costs; costs related to the apostille of various documents by the Mexican authorities; lodging and airfare associated with travel for the damages trial; and other costs directly associated with the prosecution of this case. As set forth in detail in Exhibit F to the Eubanks Declaration and Exhibit B to the Mitchell

---

[20] *See Coleman v. Block*, 589 F. Supp. 1411, 1418 (D.N.D. 1984).

Declaration, the costs sought by the *Miller* Plaintiffs are $605,709.27.  These costs are reasonable in the context of the nature and complexity of these proceedings.

## CONCLUSION

*Miller* Plaintiffs respectfully request that the Court grant this application for the payment of attorney's fees in the amount of $4,616,740.00 and costs in the amount of $609,256.92.  *Miller* Plaintiffs submit that the hourly rates charged and the number of hours billed in this action are both reasonable and acceptable in light of the complexity of this litigation and the expertise that was brought to this case by *Miller* Plaintiffs' counsel.  *Miller* Plaintiffs further submit that the costs sought herein are appropriate within the context of this litigation.  Furthermore, *Miller* Plaintiffs respectfully submit that the Court grant this application for the payment of costs and expenses incurred in prosecuting this case as they are reasonable in light of the complexity of this case and costs incurred and requested herein.

Dated:  May 13, 2022                                      Respectfully submitted,

**MOTLEY RICE LLC**

/S/ Michael E. Elsner_____
Michael E. Elsner, Esq.
John M. Eubanks, Esq.
Courtney Wolf, Esq.
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000
Fax: (843) 216-9450

Attorneys for *Miller* Plaintiffs

**MITCHELL & MITCHELL LLC**

Samuel F. Mitchell, Esq.
Steven C. Mitchell, Esq.
7161 E. Rancho Vista Dr.
Scottsdale, Arizona 85251

Attorneys for *Miller* Plaintiffs